# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

REBECCA KAUFMAN,

    Plaintiff,

-vs-                                            No. CIV 98-0917 LH/RLP

WILLIAM J. HENDERSON, Postmaster General,
United States Postal Service,

    Defendant.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss, or in the Alternative, Motion to Strike (Docket No. 5), filed October 7, 1998. On March 19, 1999, the parties stipulated to dismissal of Plaintiff's punitive damage claim, the subject of Defendant's alternative Motion to Strike. The Court, having considered the Motion to Dismiss, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds the Motion is well taken and will be **granted**.

In considering a motion to dismiss, the Court must liberally construe the pleadings, *Gas-A-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir. 1973), accepting all material allegations as true, *Ash Creek Mining Co. v. Lujan,* 969 F.2d 868, 870 (10th Cir. 1992). Dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Therefore, "the issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled

to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

Plaintiff brings suit against the United States Postal Service (USPS) under the Rehabilitation Act, 29 U.S.C. §§ 701-796*l*. Ms. Kaufman, who had earlier injured her right shoulder while employed by USPS, returned to work on September 21, 1995, under a modified job offer. (Compl. for Damages for Violations of the Rehabilitation Act ¶¶ 9, 15.) By January 1997, she began experiencing pain in her left upper extremity. (*Id.* ¶ 18.) On February 11, 1997, after working several days in areas other than provided by the modified job offer, she submitted a claim to the Office of Worker's Compensation Programs (OWCP) for the work-related injuries to her left arm. (*Id.* ¶¶ 20-22.) The following day, Plaintiff's supervisor allegedly telephoned and told her "she could not return to the workplace until a new job contract was approved by her doctor and put in place[, and] that she had to call in sick every day until a new contract could be written up." (*Id.* ¶ 23.)

Very little activity took place in the following months. In March 1997, Plaintiff's treating physician was informed of the general duties of an alternate position and he toured the postal facility to evaluate those job duties. (*Id.* ¶¶ 24, 25.) On March 21, 1997, an employee of the USPS Injury Compensation Office submitted a challenge to Plaintiff's OWCP claim. (*Id.* ¶ 27.) On October 2, 1997, Plaintiff's doctor noted that USPS calculations regarding keyboard entries required by Plaintiff's last position were not accurate and stated that the repetitious work caused the tenosynovitis to her upper extremities. (*Id.* ¶ 29.) In sum, "Plaintiff's requests to be reintegrated into the workplace were uniformly ignored by USPS for over a year," (*id.* ¶ 41), forcing Plaintiff "onto involuntary leave, requiring her to expend all her accrued leave, and, eventually, compelling her to go on leave-without-pay status for an extended period of time," (*id.* ¶ 40). Ms. Kaufman filed a

2

formal complaint alleging handicap discrimination with the USPS Equal Employment Office (EEO) on January 15, 1998. (*Id.* ¶ 30.) She accepted a modified job offer from USPS on June 1, 1998. (*Id.* ¶ 35.) On July 31, 1998, she filed this suit, alleging that "at no time from February 1997 to February 1998 did USPS offer Plaintiff any reasonable accommodations or light duty work to bring her back to the workplace." (*Id.* ¶ 39.)

Pursuant to 29 U.S.C. § 794a(a)(1), the remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-16, apply to federal employees alleging discrimination based on disability under 29 U.S.C. § 791, *see Khader v. Aspin*, 1 F.3d 968, 970 n.2 (10th Cir. 1993), including "the requirement that a claimant exhaust administrative remedies before filing suit in federal court," *id.* at 970 n.3 (quoting *Johnson v. Orr*, 747 F.2d 1352, 1357 (10th Cir. 1984)). Failure to timely file an administrative complaint is a prerequisite, if not a jurisdictional bar, to bringing suit in federal court. *Belhomme v. Widnall*, 127 F.3d 1214, 1216 & n.1 (10th Cir. 1997); *see also Jones v. Runyon*, 91 F.3d 1398, 1398 n.1 (10th Cir. 1996)("[O]ur court has referred to the requirement of an EEOC filing (as opposed to a mere requirement of a timely filing) as a jurisdictional requirement."); *but cf. Blackwell v. Runyon*, No. 96-6404, 1997 WL 362267, at *2 & n.1 (10th Cir. 1997)("It is unclear whether the failure to timely comply with administrative prerequisites is a jurisdictional bar to filing a discrimination claim in federal court, or whether the failure merely operates as an affirmative defense, like a statute of limitations defense.").

Defendant moves for dismissal on grounds of failure to timely exhaust administrative remedies. The pertinent federal regulations concerning pre-complaint processing provide:

> Aggrieved persons who believe they have been discriminated against on the basis of . . . handicap must consult a Counselor prior to filing a complaint in order to try informally to resolve the matter.

3

> (1) An aggrieved person *must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory* . . . .

29 C.F.R. § 1614.105(a)(emphasis added). Defendant maintains that the discriminatory act of which Plaintiff complains occurred on February 12, 1997, when her supervisor allegedly told her to stay home until a new job contract was prepared. Although Plaintiff does not concur, she offers no specific alternative date or discriminatory act committed by Defendant. Also, she stated February 12, 1997, as the date of the discriminatory incident or activity both on her initial contact with the EEO for counseling on December 11, 1997, (Def.'s Reply Ex. A (Information for Precomplaint Counseling form) pt. C), and in her formal complaint on January 15, 1998, (*id.* at Ex. C (EEO Complaint of Discrimination in the Postal Service) pt. 12). During this period she was represented by counsel, (*id.* at Ex. A pt. H, Ex. C pt. 10), who also gave February 12, 1997, as the "date when the discriminatory conduct complained of **commenced**," (*id.* at Ex. B (Letter from Mozes to Westervelt of 12/30/97)). Accordingly, the Court finds that there is no dispute with regard to this issue: the "date of the matter alleged to be discriminatory" is February 12, 1997. Consequently, Plaintiff's initial contact with the EEO on December 11, 1997, was untimely in that it occurred more than nine months after the alleged discriminatory act.

Plaintiff, however, argues that she alleges continuing violations, "*failures* to reasonably accommodate Plaintiff or provide her light duty work," constituting "discriminatory *actions* upon which Plaintiff claims relief." (Pl.'s Resp. at 2 (emphasis added).) The continuing violation doctrine "permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related [to events occurring with in the time limitations period] and thereby constitute a continuing pattern of discrimination." *Mascheroni v. Board of*

*Regents of the Univ. of Cal.*, 28 F.3d 1554, 1560 (10th Cir. 1994)(alteration in original)(quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)). Thus, a plaintiff suing under Title VII, or, as in this case, under the Rehabilitation Act, "may recover for discriminatory acts occurring prior to the statutory limitations period if at least one instance of the discriminatory practice occurs within the filing period and the earlier acts are 'part of a continuing policy or practice that includes the act or acts within the statutory period.'" *Id.* (quoting *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1415 (10th Cir. 1993)). It is not sufficient, however, that "acts outside the required time limit [merely] had a continuing effect within the statutory time allowed for suit." *Martin*, 3 F.3d at 1415. The critical question, therefore, is "not whether past practices have current consequences, but whether 'any present violation exists.'" *Mascheroni*, 28 F.3d at 1561 (parenthetical quoting *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977)). Additionally, while the continuing violation doctrine "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated[,] its operation [is restricted] to those situations underscored by its equitable foundation." *Martin*, 3 F.3d at 1415 n.6. Thus, "if an event . . . should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing a charge with the EEOC with respect to that event." *Id.*

Defendant's consistent failure to act in this matter cannot be characterized as other than a continuing effect or consequence of the allegedly discriminatory act in February 1997 - telling Plaintiff to stay home on sick leave until a modified job contract was presented. In fact, Plaintiff alleges no acts whatsoever by Defendant after March 1997. Although Plaintiff contends that "the Complaint raises fact disputes as to what Plaintiff knew, when she knew it, and how she should have responded

to that knowledge," (Pl.'s Resp. at 13), the Court is at a loss to identify such disputes. Moreover, these facts obviously are within her knowledge and are her burden to prove. *See, e.g., Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993)(citing *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982)(in Title VII action, plaintiff "bears the burden of proving that the conditions precedent, which the defendant has specifically joined in issue, have been satisfied"); *Bayer v. U.S. Dep't of Treasury*, 956 F.2d 330, 333 (D.C. Cir. 1992)(plaintiff alleging discrimination in federal employment has burden of proving equitable reasons for failure to comply with Title VII's requirement that plaintiff proceed before agency charged with discrimination within 30 [now 45] days of alleged Title VII violation)). Plaintiff fails to meet this burden.

Moreover, the Court cannot and will not accept Plaintiff's characterization of the accrual of her cause of action. To do so would amount to an unprincipled subversion of the limitations period: Plaintiff to this day still could be sitting at home waiting for Defendant to act and, thus, theoretically could bring her cause of action anytime from February 12, 1997, into the next millennium. This is clearly untenable and the Court concludes that it was unreasonable for Plaintiff to wait as long as she did for Defendant's response before contacting the EEO. *See Williamson v. Shalala*, 992 F. Supp 454, 458 n.9 (D.D.C. 1998)(unreasonable for plaintiff to wait longer than two weeks for response to mundane requests to receive phone calls and to have boxes removed from work area).

Plaintiff also maintains that the charge-filing period should be equitably tolled. In the Tenth Circuit, Title VII time limits are tolled, "only if there has been 'active deception' of the claimant regarding procedural prerequisites." *Mascheroni*, 28 F.3d at 1562; *Johnson v. United States Postal Serv.*, 861 F.2d 1475, 1481 (10th Cir. 1989). Thus, equitable tolling may be appropriate in instances where a plaintiff "has been 'lulled into inaction by her past employer, state or federal agencies, or the

6

courts,' or if a plaintiff is 'actively misled,' or 'has in some extraordinary way been prevented from asserting his or her rights;'" *Johnson*, 861 F.2d at 1480-81 (internal citations omitted)(quoting *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984)).

Despite her conclusory statements to the contrary, Ms. Kaufman was not actively misled or lulled into inaction by Defendant. Defendant's failure to act during this period does not rise to the level of "active deception" justifying application of equitable tolling; indeed, the Complaint contains no allegations of any act by Defendant after March 1997. False hopes on Plaintiff's part, particularly self-induced false hopes, are not sufficient. *See Mascheroni*, 28 F.3d at 1563 ("Comments by the security division leader and the human resources department may have given [plaintiff] false hope that his problems could be resolved internally, but they do not rise to the level of active deception about the procedures for filing a Title VII claim."). Furthermore, Plaintiff has not shown that she acted with due diligence in protecting her rights. *See Richardson v. Frank*, 975 F.2d 1433, 1436 (10th Cir. 1991)(citing *Martinez*, 738 F.2d at 1112).

An Order in accordance with this Memorandum Opinion shall be entered.

_____
**UNITED STATES DISTRICT JUDGE**